## TYSON *v.* HORSLEY.

### Opinion delivered January 19, 1920.

1. COMPROMISE AND SETTLEMENT—CONSIDERATION.—A voluntary settlement or compromise of claims between parties with or without merit, if asserted in good faith, is sufficient consideration to support a new agreement or contract.

2. FRAUDS, STATUTE OF—ORIGINAL UNDERTAKING.—Where defendant had, or was asserting, a claim against E.'s land for E.'s debt, and plaintiff promised to pay E.'s account if defendant would release the land and let plaintiff sell it, and defendant on this undertaking released E.'s land, and let plaintiff sell it, and defendant released E. and charged the account to plaintiff, there was an original undertaking on a sufficient undertaking, and the statute did not apply.

3. FRAUDS, STATUTE OF—QUESTION FOR JURY.—Whether there was an original undertaking by plaintiff upon a sufficient consideration to pay the debt of a third person *held* a question for the jury under the evidence.

Appeal from St. Francis Circuit Court; *R. J. Williams,* Special Judge; reversed.

*J. Walker Morrow* and *Henry G. Gatling,* for appellant.

1. The court erred in its oral instructions. The undertaking to pay John Elby's debt was an original one and based upon a new and original consideration, taking it out of the statute of frauds. An agreement not to exercise a legal right is a valid consideration to support a contract. 110 Ark. 327; 45 *Id.* 67; 76 *Id.* 292; *Ib.* 1; 106 *Id.* 465; 96 *Id.* 46.

2. The court erred in giving plaintiff's instruction No. 1. Cases *supra.*

3. The court erred in refusing No. 2 for defendant, also No. 1 for defendant. There was no testimony to show that plaintiff released or waived any lien for rent, and the alleged promise to pay the rent account not being in writing was void under the statute of frauds. 12 Ark. 174; 81 *Id.* 127; 102 *Id.* 407; 31 *Id.* 643; 113 *Id.* 542; 125 *Id.* 240. Defendant's instruction No. 1 was the law and should have been given. *Supra.* It was error to refuse defendant's No. 3. Kirby's Digest, § 1654. The mere printed name of appellant in evidence was not signed by appellant, nor any one for him, and is not a compliance with the statute so as to bind appellant. 101 Ark. 68; 20 Cyc. 272.

4. Appellee waived the rent. Kirby's Digest, § 5034; 54 Ark. 346; 103 *Id.* 91. He may waive it orally. This was a question for the jury to have passed on and the judgment should be reversed for errors in the instructions.

*Mann, Bussey & Mann,* for appellee.

1. There was no error in the instructions. None of the errors alleged were prejudicial. 96 *Ark.* 156; 91 *Id.* 310.

2. The John Elby debt was transferred to the account of plaintiff in 1917, December 31, and was an afterthought.

WOOD, J. This action was brought by the appellee against the appellant on an account which was itemized, in which the appellee claimed that appellant was due him the sum of $968.45.

Appellant answered denying liability. He alleged that the appellee was indebted to him in the sum of $934 on an account which he had against one John Elby, which he alleged that the appellee, in writing, for valuable consideration, agreed to pay.

The appellee replied denying that he was liable to the appellant for the Elby account and denying that he had promised to pay the same in writing. He, there-

fore, expressly pleaded the statute of frauds as to such account.  This was the principal issue involved.

The appellant testified in part concerning it as follows:

"As to the John Elby account, Mr. Horsley sold that land and received a check for $100 on it and told me he would take care of the John Elby account.  While I had a claim on the land, I never said anything more to Elby at all after Mr. Horsley told me he would take care of the account.  After I gave him this statement, it brought him out owing me about $315, including the John Elby account.  I didn't know whether Mr. Horsley ever denied that John Elby item or not.  I don't remember, to be honest, but I remember telling him if he would pay me the John Elby account as the statement calls for that I was perfectly willing to let the account go as it stood. I certainly had a claim on the land and expected him to take care of it; I released my claim on the land in consideration of his promise to pay the account.  I never had any more to say to John or to do with him at all."

Appellant further testified: "I thought I had a letter from Mr. Horsley in which he agreed to pay the John Elby account; I may be mistaken.  I had an assignment, held his lease contract.  Mr. Horsley told me that if I would let him sell that land he would pay the account and I released my interest.  I told him (Horsley) that if he would pay the Elby account I would pay the rent.  He said he had sold the land when he told me to charge the John Elby account to him."

Horsley, the appellee, testified concerning this as follows:  "At one time I told Mr. Tyson that there was a chance of my selling that land and if I did I would take care of his account, merely a good-natured offer; that is, that I thought I had a chance to sell it, and if I sold it I would notify Mr. Tyson and take care of this John Elby account, that he wouldn't lose it.  It was a verbal statement.  I didn't sell the Elby land; he is on the land now; he borrowed the money from the Federal Farm Loan

Bank and has the land and has a deed for it and everything else.''

The court, among others, granted the following prayer of appellee for instruction:

''No. 1. You are instructed that under the law of this State the plaintiff could not be held to pay the account of John Elby unless the promise to pay the same was in writing; and not then unless the conditions under which the promise was made, if any, were carried out.''

The court further instructed the jury at appellee's request as follows: ''There is a difference between the parties as to whether or not that was an express promise or whether a conditional promise. If it was a conditional promise, then the conditions would have to be carried out before it would become binding, and whether it be expressed or conditional if it was not in writing the plaintiff would not be bound by it.''

The appellant duly objected and excepted to the ruling of the court in granting these prayers.

The appellant among others requested the court to instruct the jury as follows: ''No. 2. You are instructed that if the plaintiff, for a valuable consideration, assumed to pay the debt of John Elby, and the defendant released his debt against Elby, relying thereon, then the defendant can recover the same.''

The court refused to grant this prayer of the appellant's, to which ruling he duly objected and excepted.

The appellant contends that the testimony tended to prove that the appellee upon a new and original consideration to him from appellant agreed to pay the latter a debt due him by one John Elby in the sum of $934.

The appellant is correct in his contention. The testimony of appellant as above set forth, tended to sustain his contention and made it an issue for the jury as to whether or not, for a new and original promise from the appellant to the appellee, the appellee agreed to pay the appellant the debt due him by John Elby.

In the recent case of *Simonson* v. *Patterson*, 137 Ark. 106, we said: ''This court is committed to the doctrine

that a voluntary settlement or compromise of claims between parties with or without merit, if asserted in good faith, is sufficient consideration to support a new agreement of contract.''

In Jonesboro Hardware Co. v. Western Tie & Timber Co., 134 Ark. 543, we said: ''We have several times held that a parol promise to pay the debt of another is not within the statute of frauds when it arises from some new and original consideration of benefit or harm moving between the newly contracting parties. We have also held that a waiver of legal right is a sufficient consideration to support a promise to pay the debt of another.''

The testimony of appellant tended to prove that he had a claim on the land of John Elby for the payment of Elby's debt to him. At least he was asserting such claim and that the appellee promised appellant that if the latter would release such claim and allow appellee to sell John Elby's land appellee would pay to appellant Elby's account, and that acting upon this agreement the appellant released Elby and charged the account to the appellee.

Under the above authorities the testimony of the appellant made it an issue for the jury as to whether or not there was an original undertaking by the appellee upon a sufficient consideration to pay to appellant the debt due him by John Elby.

The rulings of the court in giving appellee's prayer for instructions and in refusing appellant's prayer as above set forth ignored this issue. These rulings were erroneous and prejudicial to appellant.

We find no other prejudicial error in the ruling of the court, but for the errors indicated the judgment must be reversed and the cause remanded for a new trial.