## FLENNIKEN *v.* HARMON.

### Opinion delivered June 29, 1914.

CONTRACTS—AGREEMENT TO PAY DEBT OF ANOTHER—STATUTE OF FRAUDS.—
Appellant orally promised the sheriff, who had a prisoner in custody, that he would pay the prisoner's fine and the costs, in the event that the prisoner did not pay them himself. The sheriff then released the prisoner, who disappeared. The sheriff paid the fine and brought an action against appellant on his promise, to recover the same; *held*, appellant's promise was to discharge the prisoner's obligation, and was within the statute of frauds.

Appeal from Union Circuit Court; *Geo. W. Hays,* Judge; reversed.

### STATEMENT BY THE COURT.

Frank Daniels was convicted in the Union Circuit Court of a misdemeanor, and the judgment for the fine and costs amounted to $41.10. The appellant was one of Daniels's attorneys in the circuit court. After the conviction of Daniels, the deputy sheriff was taking him to jail, whereupon appellant stopped the deputy sheriff, who was taking him to jail, and told him that he, appellant, would be responsible for the negro; that he was going to appeal his case to the Supreme Court. The sheriff thereupon released the negro from custody. He turned the negro loose on appellant's word that he would be responsible for him. The sheriff had no agreement in writing with appellant that he would pay the negro's fine or any part of it. Appellant did not say he would pay the fine, but did use the following language: "I will be responsible for him. He is my negro." The sheriff settled the judgment with the county court. The negro went away. The sheriff, being unable to find him, paid the fine and costs and demanded the same from the

appellant, who refused to pay, and thereupon the sheriff (appellee) brought this suit against the appellant. The appellant denied that he was indebted to the appellee, and said that he never agreed orally or in writing to pay the fine and set up the statute of frauds.

The above are the uncontroverted facts upon which a judgment was rendered in favor of the appellee, and this appeal has been duly prosecuted.

*Pat McNally,* for appellant.

Appellant made no promise to pay the fine and costs, but, if he did, it was oral and within the statute of frauds. 20 Cyc. 188-G; 9 Cal. 328; 5 Minn. 455; 20 Cyc. 187, 186; F. cc., 188 F.; 12 Ark. 174; 76 *Id.* 292.

*J. H. Green* and *W. E. Patterson,* for appellee.

The transaction is not within the statute of frauds. 8 Johns. (N. Y.) 29; 20 Cyc. 188-G; 21 N. Y. 412; 45 Ark. 75; 22 How. 28; 64 Ark. 465; 89 *Id.* 324; 20 Cyc. 191.

WOOD, J., (after stating the facts). The appellant asked for an instructed verdict in his favor upon the undisputed evidence, and he was entitled to it.

Viewing the evidence in the most favorable light for the appellee, the promise of appellant to be responsible for the negro whom the appellee had in custody meant no more than if the negro was released and failed to pay the judgment against him, that he (appellant) would pay the same.

The testimony showed that, after the negro was released and had gone away, the appellee continued a search for him for something like six months before he mentioned the matter to appellant about paying the fine. The reason he gave for this conduct was that he thought that appellant was also endeavoring to retake the negro, Frank Daniels.

The appellant testified that he did not promise to pay the negro's fine, but wanted the negro released, so that the latter could see his father-in-law and get the money

to pay his fine. Appellant said he had never seen the negro before he was employed to defend him.

The effect of the undisputed testimony was tantamount to a promise on the part of appellant to pay the negro's fine and costs in the event that the negro did not pay it himself. The negro was not discharged from the obligation to pay the fine and costs by the promise of appellant to pay the same. The judgment was not satisfied by virtue of that promise, and, if the negro had been recaptured, he would have been liable for the fine and costs. There was no new and independent consideration beneficial to appellant, and inducing him to make the promise upon which appellee relies. The promise of the appellant, at most, was but a collateral undertaking to satisfy the judgment against the negro, Daniels, in the event that Daniels, himself, was not made to pay the same. And the promise was therefore clearly within the statute of frauds.

The language of appellant to the effect that he would be responsible for the negro, that he was going to appeal the case, could have no other meaning than that, if the Supreme Court affirmed the judgment and Daniels did not pay it and was not present so that he could be taken into custody and forced to pay it, that in that event appellant would pay it. In other words, it was not an unconditional promise upon the part of appellant to pay the judgment against Daniels, but was only a promise to be surety for him, and to see that he paid it. In other words, this record shows that the main purpose of appellant was to answer for Daniels, but not to "subserve some pecuniary business purpose of his own, involving either benefit to himself or damage" to the appellee. His promise, therefore, was within the statute of frauds. Kirby's Digest, § 3654, subdiv. 2; *Kurtz* v. *Adams,* 12 Ark 174; *Chapline* v. *Atkinson,* 45 Ark. 67; *Scott* v. *Moore,* 89 Ark. 324; *Gale* v. *Harp,* 64 Ark. 465; *Long* v. *McDaniel,* 76 Ark. 292.

It follows that the court erred in not granting appellant's prayer for instruction, directing the jury to return a verdict in his favor.

The judgment is therefore reversed, and the cause is dismissed.